Filed 6/26/14  In re C.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re C.C., a Person Coming Under the
Juvenile Court Law.

| | |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E060193 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ108484) |
| v. | OPINION |
| A.C. et al., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge.

Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and

Appellant father.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and

Appellant mother.

1

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

C.C. (minor; born in 2012) came to the attention of the Riverside County Department of Public Social Services (the department) on the day of his birth when both he and defendant G.P. (mother) tested positive for amphetamines. Defendant A.C. (father) was also using methamphetamine. Mother and father (collectively "parents") were homeless. The juvenile court denied mother reunification services pursuant to Welfare and Institutions Code sections 361.5, subdivisions (b)(10) and (11),[1] as mother's parental rights to another child had previously been terminated. The court granted reunification services for father.

On March 25, 2013, the juvenile court terminated father's reunification services and set the section 366.26 hearing. Parents filed section 388 petitions seeking reunification services. The juvenile court denied parents' petitions and terminated their parental rights. On appeal, parents contend the court abused its discretion in denying their petitions. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The department took minor into protective custody after both he and mother tested positive for amphetamines. Mother admitted to using methamphetamine the day before

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

2

minor's birth, but said it was the first time she had used in the past two years. Nevertheless, mother's prenatal records reflected mother had tested positive for controlled substances seven times during her pregnancy; six times for amphetamines and once for marijuana. Mother maintained the test results were erroneous. Security alleged mother's uncle had attempted to smuggle illegal drugs into the hospital for mother. She had another daughter who had previously been removed from her custody, at least in part, due to her drug use. The daughter was returned to mother's custody, but later removed again. Mother's reunification services and parental rights to her daughter were later terminated.

Mother said she had been in numerous rehabilitation programs, but "'I inevitably go back to using methamphetamine.'" Mother later said she had been clean for two and a half weeks prior to her most recent use. She then admitted to using approximately once monthly during her pregnancy. Mother had sustained numerous convictions for controlled substance related violations.

Mother had a mental history which included bipolar disorder and schizophrenia. She had been prescribed 100 mg. of Zoloft daily, but only took 50 mg. daily as she said she did not like the taste of the medication. She never returned to the clinic to have her medication refilled. Mother described herself as "'a self mutilating, manic depressive who suffers from bipolar and borderline schizophrenia.'"

Father said he was aware of mother's drug use. He admitted to using methamphetamine every couple of days. Parents informed the social worker they had

3

been homeless since December 2011. They had been living in a park, sleeping underneath a playground slide. Father would go out at night to search for aluminum cans to recycle in order to obtain money to buy cigarettes for mother. The maternal grandmother had informed mother she could move in with her, but that father could not. Mother refused to move back in with the maternal grandmother without father.

On June 20, 2012, the department filed a juvenile dependency petition alleging mother had failed to protect minor by abusing controlled substances during pregnancy (b-1), suffering from untreated mental health issues (b-2), suffering an extensive history of untreated controlled substance abuse (b-3), and having a history which included termination of her parental rights to another child (b-6). As to father, the department alleged he had a history of abusing controlled substances (b-4). As to both parents, the department alleged their homelessness prohibited them from providing a stable home environment for minor (b-5).

On June 21, 2012, the juvenile court detained minor and ordered minimum visitation of once weekly. The department had already provided parents substance abuse referrals. In the jurisdiction and disposition report filed July 18, 2012, the social worker recommended the court deny mother reunification services pursuant to section 361.5, subdivision (b)(10). The social worker noted parents had been offered twice weekly visitation, but declined several visits. Eventually, they had settled on two hour visitation every Wednesday. Father tested positive for amphetamines on June 3, 2012. He admitted he had been using since he was 18 years old. Both parents tested positive for

4

amphetamines on July 11, 2012. Mother contested the results contending saliva tests were unreliable, but she refused to provide a urine sample.

In an addendum report dated July 23, 2012, the social worker noted parents had canceled a visit on July 18, 2012. The social worker observed "At this time, neither parent is participating in services, visiting their child, or submitting to drug testing. The parents remain homeless . . . ." In an addendum report filed August 15, 2012, the social worker noted parents remained homeless after declining referrals to homeless shelters. Parents had declined participation in drug testing, had not participated in parenting services, and had not made themselves available for a substance abuse assessment: "At this time their participation in reunification services is none." Parents had been inconsistent in their visitation with minor, canceling visits on July 18, August 8, and 15, 2012; ending a visit early on July 25, 2012; and arriving late and leaving early to a visit on August 1, 2012. The social worker observed that the visitation schedule had been specifically established to accommodate mother's participation at a treatment facility and father's work schedule; however, mother was not participating in any services and father was not working.

On August 23, 2012, the juvenile court sustained the allegations in the petition, removed minor from parents' custody, denied reunification services to mother, and granted reunification services to father. In a six-month status review report filed February 4, 2013, the social worker recommended terminating father's reunification services. Parents were now living with the paternal grandmother.

Father's reunification services had included general counseling, a parenting education program, a substance abuse program, and random drug testing. Father was not working and had failed to engage in any of the case plan services. He failed to show for random drugs tests required on September 27, October 8, October 25, November 1, November 30, and December 11, 2012. Parents had been offered two-hour weekly visitation with minor, but canceled approximately two visits a month, arrived late, and rarely stayed the entire two-hour period when they did show. The social worker was concerned that parents were only coming to one visit a month in order to obtain a monthly bus pass. In December 2012, parents canceled three weeks of visitation in a row. At a visit on December 26, 2012, parents stayed for only 45 minutes. Nevertheless, parents behaved appropriately during their visits with minor.

In an addendum report dated March 25, 2013, the social worker reported father had completed a 30-day inpatient treatment program on March 13, 2013. He had an appointment for outpatient treatment for March 26, 2013. Father reported attending Narcotics Anonymous (NA) meetings. Father had not participated in any general counseling, parenting education, or random drug testing.

Mother entered a 60-day residential program on January 23, 2013, which she successfully completed on March 21, 2013. She entered an aftercare program on March 22, 2013, with a projected leave date of June 22, 2013. Mother attended 24 NA meetings between January 24, and February 27, 2013.

At the six-month hearing on March 25, 2013, the juvenile court noted minor was taken into protective custody in June 2012, services for father had been ordered on August 23, 2012, yet father had only begun drug treatment in February 2013 and had not participated in any other services. The court found father's progress minimal, terminated father's reunification services, set the section 366.26 hearing, and ordered twice monthly visitation.

On July 8, 2013, the social worker filed the selection and implementation report in which she recommended the court find adoption the most appropriate plan for minor, reduce visitation to once monthly, and continue the matter for completion of an Interstate Compact on the Placement of Children (ICPC) with respect to mother's relatives living in Wisconsin. The relatives had never met minor. The department had initially placed minor with nonadoptive foster parents the day after his birth in 2012, but placed him with the prospective adoptive parent on May 9, 2013. The ICPC process had begun on May 21, 2013. Parents had been consistently visiting with minor twice monthly.

On July 22, 2013, mother filed a section 388 petition requesting reunification services and expanded visitation with minor. Mother had completed her after care program on June 21, 2013. She had participated in 28 Inland Valley Recovery Services group or interview meetings between May 6, and July 9, 2013; attended parenting classes; attended 12-step meetings; had a 12-step sponsor; attended 22 NA meetings between April 15, and June 4, 2013; tested negative for controlled substances on four

occasions between May 2, and July 9, 2013; and had maintained regular visitation with minor.

On December 4, 2013, father filed a section 388 petition requesting reinstatement of reunification services and that the department complete the ICPC process.[2]  Father had been admitted to an outpatient substance abuse program on July 18, 2013, and completed it on October 3, 2013.  He had engaged in group and individual sessions and 12-step meetings.  Father had seven negative drug tests between July 22, and October 3, 2013.

The department filed opposition to father's petition noting father had a 10-year history of substance abuse, had received nine months of services before they were terminated, and had only received three months of substance abuse services.  On the same date, the department filed an addendum report in which the social worker recommended the court deny mother's section 388 petition and terminate parents' parental rights.  The social worker observed that the ICPC had not been approved because the prospective familial caregivers failed to comply with attempts to obtain criminal background checks.  The social worker had performed her own search on the Riverside County Superior Court website in which she found that one of the prospective caregivers had a criminal conviction for felony assault with a deadly weapon; thus, it was unlikely either Wisconsin or California would approve the placement of minor in Wisconsin.

---

[2]  The record reflects the petition was not filed until December 10, 2013; however, at the hearing on December 4, 2013, father noted he had filed the section 388 petition, but wished to submit additional supportive documentation.

On December 10, 2013, the juvenile court held a hearing on parents' section 388 petitions. Mother testified she had been living in an apartment since July 2013. She had been sober since January 24, 2013. Mother continued to attend 12-step meetings approximately five times a week. She had a psychiatric evaluation once monthly, psychological sessions once every three months, received Social Security disability for manic depression, and was taking medication twice daily to control her mood swings. Mother had completed a parenting course.

Father testified he currently lives with his mother. He attended 12-step meetings. Father was not currently testing for controlled substances, but would be willing to do so. He visits with minor every other week for an hour. The juvenile court denied mother's section 388 petition finding it was not in minor's best interest to offer mother services and that mother's circumstances were changing, but not changed. The court denied father's petition finding it was not in minor's best interest to offer father additional services and that father had not completed his case plan. During the section 366.26 hearing, the court noted that parents had only had inconsistent, supervised visitation of one to two hours during the dependency proceedings: "There is no parental relationship." The court terminated parents' parental rights.

DISCUSSION

Parents contend the court abused its discretion in denying their section 388 petitions. We disagree.

"The juvenile court may modify an order if a parent shows, by a preponderance of the evidence, changed circumstance or new evidence and that modification would promote the child's best interests. [Citations.] This is determined by the seriousness of the problem leading to the dependency and the reason for its continuation; the strength of the parent-child and child-caretaker bonds and the time the child has been in the system; and the nature of the change of circumstance, the ease by which it could be achieved, and the reason it did not occur sooner. [Citation.] After termination of services, the focus shifts from the parent's custodial interest to the child's need for permanency and stability. [Citation.] 'Whether a previously made order should be modified rests within the dependency court's discretion, and its determination will not be disturbed on appeal unless an abuse of discretion is clearly established.' [Citation.] The denial of a section 388 motion rarely merits reversal as an abuse of discretion. [Citation.]" (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

Section 388 can provide "an 'escape mechanism' when parents complete a reformation in the short, final period after the termination of reunification services but before the actual termination of parental rights." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 528.) "Even after the focus has shifted from reunification, the scheme provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) However, the best interests of the child are of paramount consideration when a petition for modification is brought after termination of

10

reunification services. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

Chronic substance abuse is generally considered a more serious problem and, therefore, is less likely to be satisfactorily ameliorated in the brief time between termination of services and the section 366.26 hearing. (*In re Kimberly F.*, *supra*, 56 Cal.App.4th at pp. 528, 531, fn. 9 ["It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform."]; *In re Amber M.*, *supra*, 103 Cal.App.4th at p. 686 [no abuse of discretion in denying section 388 petition where mother established only a 372-day period of abstinence.]; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423 ["seven months of sobriety since [] relapse . . . , while commendable, was nothing new."].)

Here, to the extent the court believed mother's testimony she had been clean since January 24, 2013,[3] the court weighed this against the context of mother's substance abuse history as a whole. Mother had reported abusing controlled substances since the age of

---

[3] Mother's latest documented clean test was July 9, 2013, five months before the hearing.

12, meaning she had an 18- year history of substance abuse. Mother had reported participation in numerous rehabilitation programs, yet never stayed clean for very long. She had failed to benefit from substance abuse treatment programs offered by the department during proceedings regarding her daughter between 2004 and 2005. Drug tests confirmed mother's admission she used controlled substances during the entirety of her pregnancy. Mother had numerous prior convictions for substance related offenses. Thus, the court acted within its discretion in determining mother's sobriety of less than 11 months when weighed against her 18-year, relapse filled, drug history was not a changed circumstance.

Father had reported a 10-year history of substance abuse. He failed to provide a clean date but, at earliest, father had begun participation in a 30-day residential treatment program on February 11, 2013. Thus, father had only been clean for 10 months. He had been offered nine months of services before they were terminated. Father failed to offer any evidence he had participated in any other aspect of his case plan. Thus, the court acted within its discretion in denying father's petition based on his failure to complete his case plan.

Moreover, parents failed to establish they had a meaningful relationship or bond with minor. During the 18 months of minor's life he had never been in parents' custody. Parents had maintained inconsistent visitation with minor during the early period of the proceedings, sometimes apparently only visiting with minor once monthly even when they had been originally offered twice weekly visitation. Parents apparently did not

12

begin to consistently visit with minor until he was at least six months old.  Even then, parents only engaged in supervised visitation with minor twice monthly.

Minor had been placed with the prospective adoptive parent on May 9, 2013. Minor "looks to the [pro]spective adoptive parent for daily love, care and comfort. [Minor] is affectionate with the prospective adoptive parent and he is happy, secure and well integrated into the home."  Minor was "thriving and doing well in" the prospective adoptive parent's home  The prospective adoptive parent is "present[ly] ready and willing to give [minor] a lifetime of stability and care."  Thus, it was not in minor's best interest to grant parents' petitions.  The juvenile court acted within its discretion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

KING

Acting P. J.

MILLER

J.

13